**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| AL PEREIRA | | 1:17-cv-06945 (RA) |
| | Plaintiff, | |
| - against – | | ECF Case |
| KENDALL JENNER, INC. | | |
| | Defendant. | |

**MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND SANCTIONS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 4

**POINT I:    RULE 11 SANCTIONS ARE NOT AVAILABLE** .................................................. **4**

  A.   DEFENDANT'S RULE 11 MOTION, BROUGHT THREE MONTHS AFTER DISMISSAL, IS BOTH
       UNTIMELY AND PROCEDURALLY IMPROPER BECAUSE IT DEPRIVED PLAINTIFF OF THE
       REQUIRED "SAFE HARBOR" PERIOD ......................................................................... 5

  B.   DEFENDANT HAS FAILED TO DEMONSTRATE THAT PLAINTIFF'S PLEADING IS
       SUBSTANTIVELY BASELESS OR IMPROPERLY MOTIVATED ..................................................... 9

**POINT II:   SANCTIONS UNDER 28 U.S.C. §1927 SANCTIONS ARE NOT
             WARRANTED** ......................................................................................... **11**

  A.   DEFENDANT HAS FAILED TO DEMONSTRATE "BAD FAITH" ............................................... 11

  B.   DISMISSING A CASE PURSUANT TO RULE 41 IS NOT GROUNDS FOR SANCTIONS ................. 12

  C.   PLAINTIFF'S OMISSION IN SERVING THE NOTICE OF PRETRIAL CONFERENCE DID NOT
       PREJUDICE DEFENDANT AND IS NOT GROUNDS FOR FEES ................................................... 13

  D.   DEFENDANT'S REFERENCES TO CONFIDENTIAL SETTLEMENT NEGOTIATIONS VIOLATES
       FED.R.EVID. 408 AND, IN ANY EVENT, ARE NOT GROUNDS FOR SANCTIONS ..................... 14

**POINT III: DEFENDANT IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES
           AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT** ............... **15**

  A.   DEFENDANT IS NOT A "PREVAILING PARTY" UNDER SECTION 505 ................................ 15

  B.   PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE AND THEREFORE DOES NOT WARRANT
       A FEE AWARD PURSUANT TO THE COPYRIGHT ACT ......................................................... 17

     1.   Plaintiff's Infringement Claim is Objectively Reasonable ............................................. 18

     2.   Plaintiff's Motivations Were and Are Proper .............................................................. 20

     3.   A Fee Award Will Not Advance the Goals of Compensation and Deterrence ............. 21

**CONCLUSION** ................................................................................................................ **23**

# TABLE OF AUTHORITIES

## CASES

*16 Casa Duse, LLC v. Merkin,*
    791 F.3d 247, 264 (2d Cir. 2015)...................................................................... 18

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240, 1255 (3d Cir. 1983)............................................................ 10, 20

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
    579 F.3d 143, 150 (2d Cir. 2009).................................................................... 5

*Barber v. Miller,*
    146 F.3d 707, 710–11 (9th Cir.1998) ............................................................. 6

*Blaser v. Bessemer Tr. Co.,*
    No. 01 CIV. 11599(DLC), 2002 WL 31359015, at *3 (S.D.N.Y. Oct. 21, 2002)..................... 7

*Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,*
    369 F.3d 385, 389–90 (4th Cir.2004) ............................................................. 5

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,*
    532 U.S. 598, 600 (2001).............................................................................. 16

*BWP Media USA, Inc. v. Gossip Cop Media, LLC,*
    No. 13-CV-7574 (KPF), 2015 WL 321877, at *4 (S.D.N.Y. Jan. 26, 2015) ...................... 17

*Cardiff Chamber of Commerce, Inc. v. Lebherz,*
    2016 WL 9525236, at *2 (S.D. Cal. July 15, 2016) ............................................. 20

*Carter v. Inc. Vill. of Ocean Beach,*
    759 F.3d 159, 163 (2d Cir. 2014).................................................................... 16

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
    150 F.3d 132, 137 (2d Cir. 1998)................................................................ 10, 19

*Castro v. Mitchell,*
    727 F. Supp. 2d 302, 308-09 (S.D.N.Y. 2010) .................................................... 8

*Chambers v. Time Warner, Inc.,*
    279 F.Supp.2d 362, 365 n. 4 (S.D.N.Y.2003) .................................................... 16

*Cooter and Gell v. Hartmarx Corp.,*
496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)............................................. 6

## CASES *(continued…)*

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
   564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), *aff'd*, 326 F. App'x 575 (2d Cir. 2009).......... 10, 20

*Davis v. Gap, Inc.*,
   246 F.3d 152, 158 (2d Cir. 2001)................................................................................. 10

*Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*,
   782 F.2d 329, 344 (2d Cir. 1986)................................................................................. 21

*eSilicon Corp v. Silicon Space Tech*,
   No. C-11-06184 EDL, 2013 WL 12174295, at *10 (N.D. Cal. Feb. 22, 2013) ...................... 20

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).................................................... 10

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517, 518, 114 S. Ct. 1023, 1025, 127 L. Ed. 2d 455 (1994)..................................... 18

*Great Importations, Inc. v. Caffco Int'l, Inc.*,
   No. 95CIV.0514(MBM)(SEG), 1997 WL 603410, at *1 (S.D.N.Y. Sept. 30, 1997) ............. 22

*Hadges v. Yonkers Racing Corp.*,
   48 F.3d 1320, 1327–28 (2d Cir.1995)................................................................................. 7

*Hallford v. Fox Entm't Grp., Inc.*,
   No. 12 CIV. 1806 WHP, 2013 WL 2124524, at *2 (S.D.N.Y. Apr. 18, 2013) ....................... 23

*In re Aimster Copyright Litig.*,
   334 F.3d 643, 649 (7th Cir. 2003) ..................................................................................... 10, 20

*In re Pennie & Edmonds LLP*,
   323 F.3d 86, 89 (2d Cir. 2003)......................................................................................... 5, 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979, 1986, 195 L. Ed. 2d 368 (2016) ...................................................... 19

*Lan v. Time Warner, Inc.*,
   No. 11CIV2870ATJCF, 2016 WL 6778180, at *7 (S.D.N.Y. Oct. 18, 2016), *report and
   recommendation adopted,* No. 11CIV2870ATJCF, 2016 WL 6779526 (S.D.N.Y. Nov. 15,
   2016) ......................................................................................................................... 8

*Lawrence v. Richman Grp. of CT LLC*,
   620 F.3d 153, 158–59 (2d Cir. 2010)......................................................................... 6

**CASES** *(continued…)*

*Magder v. Lee, No. 14-CV-8461 (JFK),*
  2015 WL 4887551, at *2 (S.D.N.Y. Aug. 17, 2015) ................................................ 17

*Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*, No. 96 C 2966, 2002 WL 226864, at
  *2 (N.D. Ill. Feb. 13, 2002) ........................................................................................ 20

*Matthew Bender & Co. v. W. Pub. Co.,*
  240 F.3d 116, 121 (2d Cir. 2001) ............................................................................... 18

*McMahon v. Shearson/American Express, Inc.,*
  896 F.2d 17, 22 (2d Cir.1990) ...................................................................................... 5

*Milltex Indus. Corp. v. Jacquard Lace Co.,*
  55 F.3d 34, 38 (2d Cir.1995) ....................................................................................... 12

*Morroni v. Gunderson,*
  169 F.R.D. 168 (M.D. Fla. 1996) .................................................................................. 7

*Ninox Television Ltd. v. Fox Entm't Grp., Inc.,*
  No. 04-CV-7891 (DLC), 2006 WL 1643300, at *2 (S.D.N.Y. June 13, 2006) ...................... 17

*Oliveri v. Thompson,*
  803 F.2d 1265 (2d Cir. 1986) ...................................................................................... 11

*Photocircuits Corp. v. Marathon Agents, Inc.,*
  162 F.R.D. 449 (E.D.N.Y.1995) .................................................................................... 6

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,*
  No. 09-CV-00970-PAB-KMT, 2013 WL 1129404, at *6 (D. Colo. Mar. 18, 2013) .............. 20

*Revson v. Cinque & Cinque, P.C.,*
  221 F.3d 71 (2d Cir.2000) ........................................................................................... 12

*Ridder v. City of Springfield,*
  109 F.3d 288, 297 (6th Cir.1997) .................................................................................. 6

*Roberson v. Giuliani,*
  346 F.3d 75, 79 (2d Cir. 2003) ..................................................................................... 17

*Roth v. Green,*
  466 F.3d 1179, 1193 (10th Cir.2006) ............................................................................ 5

*Scrilla Hill Entm't Inc. v. Dupree,*
  No. 16-CV-490 (JMF), 2016 WL 5817064, at *3 (S.D.N.Y. Oct. 5, 2016) ....................... 16

**CASES** *(continued…)*

*Tompkins v. Cyr,*
    202 F.3d 770, 788 (5th Cir.2000) ........................................................... 6

*Torah Soft Ltd. v. Drosnin,*
    224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ........................................... 12

*TRF Music Inc. v. Alan Ett Music Grp., LLC*, No. 06 CIV. 0349 (PKC), 2006 WL 1376931, at *1
    (S.D.N.Y. May 18, 2006).................................................................... 15, 16

*U.S. v. International Brotherhood of Teamsters,*
    948 F.2d 1338, 1344 (2d Cir.1991)......................................................... 4

*Unite Here v. Cintas Corp.*,
    500 F. Supp. 2d 332, 338 (S.D.N.Y. 2007) ............................................. 8

*Walt Disney Co. v. Best,*
    No. 88 Civ. 1595(SWK), 1990 WL 144209, at *4 (S.D.N.Y. Sept. 26, 1990)................. 11, 20

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
    564 F.3d 110, 114–15 (2d Cir. 2009)................................................... 11, 13

**STATUTES**

17 U.S.C. § 505................................................................................ passim
18 U.S.C. § 1927.............................................................................. passim

**RULES**

Fed. R. Civ. P. 11 ............................................................................ passim
Fed. R. Evid. 408 ............................................................................... 14

**TREATISES**

2 *Moore's Federal Practice* § 11.22[1](c) (3d ed.2001)................................... 7

5A Charles Alan Wright & Arthur R. Miller,
    FEDERAL PRACTICE AND PROCEDURE § 1337.2, at 729 (3d ed. 2004) ....................... 8

## INTRODUCTION

**"These designs were not well thought out and we deeply apologize to anyone that has been upset and/or offended, especially to the families of the artists. We are huge fans of their music and it was not our intention to disrespect these cultural icons in anyway.  The tee shirts have been pulled from retail and all images have been removed. We will use this as an opportunity to learn from these mistakes and again, we are very sorry."**

- Defendant's public statement as reported in *Kendall Jenner Apologizes for Notorious B.I.G and Tupac T-Shirts: 'It Was Not Our Intent to Disrespect'*, Us Magazine, June 29, 2017 [*see* https://www.usmagazine.com/celebrity-news/news/kendall-jenner-apologizes-for-notorious-big-and-tupac-t-shirts-w490538/] (emphasis added)

Having publicly admitted to violations of the Copyright Act, Defendant Kendall Jenner, Inc. comes before this Court on a procedurally improper sanctions motion to seek her attorneys' fees for being sued for the same violations for which she has already conceded liability.  How can Plaintiff's claim possibly be deemed frivolous if Kendall Jenner has already admitted to infringing Plaintiff's copyright?  Defendant's motion, filed almost three months after Plaintiff exercised his unfettered right to voluntarily dismiss the case under Rule 41, is a clear-cut abuse of judicial process which was calculated to extort money from Plaintiff's counsel.

 No stranger to claims of cultural appropriation, Defendant has made a business of trespassing on the creativity and rights of others while capitalizing on its social media and reality television fan-base.  At the heart of this case is a unique photograph of musical legends Tupak Shakur and Notorious B.I.G., taken at the height of their fame and rivalry.  The photographer, Mr. Pereira, had the fortune, vision and talent to capture this indelible moment in hip-hop history.

Defendant, having been previously sued by another photographer whose images were infringed upon in a similar incident, is now seeking attorneys' fees for a legitimate, straight-forward copyright infringement claim.  The audacity of this serial infringer is shocking.  Putting

1

aside that sanctions are wholly improper under Rule 11, section 1927 and the Copyright Act, Plaintiff's case remains a viable, legitimate claim which he continues to prosecute in a district court in California. If Defendant truly believes that Plaintiff's claim lacks merit, it could serve a Rule 11, or file a 1927 motion in the pending case in California. It has not done so. Instead, Defendant seeks to tax this Court's resources three months after the case was voluntarily dismissed in a transparent effort to harass Plaintiff's counsel and rack up its counsels' fees.

Accordingly, the motion should be denied and the Court should award Plaintiff his attorneys' fees for having to oppose Defendant's frivolous and improper motion.

## **BACKGROUND**

Plaintiff is a professional photographer who documented an iconic image of rapper Tupac Shakur alongside rival rappers Notorious B.I.G. and Redman. [First Amended Complaint ("FAC") ¶¶ 5, 7 & Exhibit A] The photograph is a unique representation of competing voices in a truly American art form. Plaintiff registered the photograph with United States Copyright Office under the number VA 2-065-045 in anticipation of this litigation. [FAC ¶ 9].

Defendant offered and sold T-Shirts featuring the photograph on its website. [FAC ¶ 10 & Exhibit B] Defendant did not license the photograph nor did it have permission or consent to use the photograph on any products. [FAC ¶ 11].

Along with the Plaintiff's photograph, Defendant also offered other T-Shirts with images belonging to other photographers. [*See* Exhibit A]. It has been widely reported in the media that, the Defendant received at least one cease-and-desist letter from the attorneys of Notorious B.I.G.'s mother demanding that the T-Shirts featuring her deceased son be taken down. In fact, on June 29, 2017, Ms. Kendall Jenner tweeted an apology and states that "tee shorts have been pulled from retail and all images have been removed." *Id.* On July 7, 2017, Michael Miller, one

of the other photographers, filed a complaint alleging copyright infringement against the Defendant in the Central District of California on July 7, 2017.  *See Miller v. Kendall Jenner, Inc. et al.*, No. 2:17-cv-04992-RSWL-SS.  That suit alleged the infringement of two photographs belonging to Mr. Miller.  In that case, Defendant similarly claimed that only two T-Shirts were sold (one T-Shirt per image).  Defendant's counsel in this case also represented Defendant in that case.  That case was settled as of April 12, 2018.

On September 12, 2017 Plaintiff filed this action for copyright infringement.   [ECF Docket ("Dkt.") # 1]  Defendant never made an appearance on the record.  Instead, as Defendant admits in a series of improper submissions of communications regarding settlement protected by Fed. R. Evid. 408, its counsel contacted Plaintiff's counsel on September 13, 2017.  Defendant was therefore on notice of the lawsuit as early as September 13, 2017 and elected not to make an appearance on the record.

On September 14, 2017 the Court issued an Order and Notice of Initial Conference. [Dkt. #7].  The Court scheduled the conference for December 1, 2017.  Having executed a waiver of service on October 12, 2017, and jointly submitted a letter in anticipation of conference on November 27, 2017, Defendant still did not make an appearance on the record at that point.  In fact, Defendant claims that it had submitted its part of the joint letter as early as November 22, 2017.   It was not until November 28, 2017, when it posted a letter asking the Court to appear telephonically, that Defendant mentioned Plaintiff's delay in serving the Order for Initial Conference.  Though this omission did not prejudice Defendant who was already on actual notice of the order, Plaintiff acknowledges that he omitted to promptly serve the Order and regrets such omission.  Defendant only attempted to file a *pro hac vice* admission (one of several attempts) some two weeks after the date of the Initial Conference.

This Court then granted several extensions to parties that included Defendant's time to respond to the FAC, and a reply to Plaintiff's opposition to an order to show cause. The Court set a show cause hearing for January 8, 2018 after a couple of extensions and on January 4, 2018, Plaintiff elected to voluntarily dismiss the case without prejudice under Rule 41(a), which is his unfettered right. [Dkt. #24]. The Court signed the dismissal on January 5, 2018.

Defendant admits that it served a copy of its motion for fees pursuant to Rule 11 as late as March 8, 2018 – over two months after the case was dismissed. Defendant's counsel demanded a substantial amount of money in order to forego filing its Rule 11 Sanctions with the court, converting the Safe Harbor provision of Rule 11 into an extortion plot. On March 30, 2018, Defendant caused the motion to be filed on ECF, albeit deficiently. [Dkt. # 26]. The motion seeking additional sanctions under section 1927 and section 505 of the Copyright Act was filed almost three months after the case was dismissed. Moreover, Defendant seeks fees under section 505 as a "prevailing party" even though she is likely to be held liable for copyright infringement in California.

## ARGUMENT

## POINT I:    RULE 11 SANCTIONS ARE <u>NOT</u> AVAILABLE

Rule 11 Sanctions are an important tool to deter the filing of frivolous pleadings, motions or other papers without a reasonable inquiry and for improper purposes, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation. Fed. R. Civ. P. 11(b); see also *U.S. v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1344 (2d Cir.1991) ("Rule 11 'does not license a district court to sanction any action by an attorney or party that it disapproves of . . . . Imposition of sanctions must be based on a pleading, motion or other paper

signed and filed in federal court....'") (*quoting McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 22 (2d Cir.1990)).

### A.    DEFENDANT'S RULE 11 MOTION - BROUGHT THREE MONTHS AFTER DISMISSAL - IS BOTH UNTIMELY AND PROCEDURALLY IMPROPER BECAUSE IT DEPRIVED PLAINTIFF OF THE REQUIRED "SAFE HARBOR" PERIOD

Where a sanction is initiated by a party's motion, this provision requires initial service of the motion but delays filing of the motion to the court for 21 days.  Filing of the motion is permitted 21 days after service only if the challenged submission is not "withdrawn or appropriately corrected." Fed.R.Civ.P. 11(c)(1)(A), 11(c) (2).  Thus the "safe-harbor" allows the attorney to withdraw or amend the problematic document.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

"Although Rule 11 contains no explicit time limit for serving the motion, the 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003).  Thus, in order to properly serve the Rule 11 motion, the challenged counsel must have a meaningful way to either withdraw or amend a pleading, motion, or other submission. *Id.*  Without the ability to correct a challenged submission, the 'safe-harbor' provision is meaningless and the Rule 11 motion cannot be served.  *Id.*

Several sister Circuits have similarly held that Rule 11 sanctions are inappropriate when the challenged party could no longer withdraw or amend or otherwise correct a pleading, motion or other submission.  *See Roth v. Green,* 466 F.3d 1179, 1193 (10th Cir.2006) (reversing sanctions award where Rule 11 motion filed after complaint's dismissal); *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,* 369 F.3d 385, 389–90 (4th Cir.2004) (reversing

sanctions award where Rule 11 motion filed after summary judgment granted); *Tompkins v. Cyr,* 202 F.3d 770, 788 (5th Cir.2000) (holding sanctions properly denied where Rule 11 motion filed after trial's conclusion); *Barber v. Miller,* 146 F.3d 707, 710–11 (9th Cir.1998) (reversing sanctions award where Rule 11 motion filed after complaint's dismissal); *Ridder v. City of Springfield,* 109 F.3d 288, 297 (6th Cir.1997).

Defendant relies on the Supreme Court case of *Cooter and Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) for the proposition that district courts retain the authority after a case has been voluntarily dismissed to impose Rule 11 sanctions for violations that occur prior to the voluntary dismissal of an action. However, *Cooter and Gell v. Hartmarx Corp.* was decided in 1990, three years prior to the 1993 amendments, including the addition of the 21-day "safe harbor" period to Rule 11.  Thus, the 1993 amendments to Rule 11 had the effect of overruling *Cooter and Gell v. Hartmarx* to the extent that under the 1993 version of Rule 11, a party who seeks Rule 11 sanctions based upon allegations in a complaint, cannot wait until the action has been voluntarily dismissed by the opposing party because the party who voluntarily dismisses a case has withdrawn the offending pleading by dismissing the case.  *Photocircuits Corp. v. Marathon Agents, Inc.,* 162 F.R.D. 449 (E.D.N.Y.1995).

Therefore, it was procedurally improper for Defendants to serve their Rule 11 motion and file it with this Court almost three months after the case was voluntarily dismissed given that Plaintiff had no opportunity to withdraw his pleading.  Fed.R.Civ.P. 11 Advisory Committee Note to 1993 Amendments notes that "[g]iven the 'safe harbor' provisions ..., a party cannot delay serving its Rule 11 motion until after conclusion of the case (or judicial rejection of the offending contention)". *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158–59 (2d Cir. 2010).  "Ordinarily the motion should be served promptly after the inappropriate paper is filed,

and, if delayed too long, may be viewed as untimely . . . ." Fed.R.Civ.P. 11 advisory committee's note to 1993 Amendments. *In re Pennie & Edmonds LLP*, 323 F.3d at 89 (quoting Fed.R.Civ.P. 11 Advisory Committee Note to 1993 Amendments).

To be sure, the Second Circuit does <u>not</u> allow for Rule 11 motion sanctions after a voluntary dismissal.  *See, e.g., Blaser v. Bessemer Tr. Co.*, No. 01 CIV. 11599(DLC), 2002 WL 31359015, at *3 (S.D.N.Y. Oct. 21, 2002) (arguing that the Court may not otherwise impose sanctions pursuant to Rule 11 because plaintiff voluntarily dismissed her complaint before defendant filed its motion for sanctions, thus bringing Blaser within Rule 11(c)(1)'s 21–day safe harbor period); *Hadges v. Yonkers Racing Corp.,* 48 F.3d 1320, 1327–28 (2d Cir.1995) (discussing Rule 11's safe harbor period).

In effect, "the 21-day, safe-harbor service requirement controls not only the earliest date on which a motion may be filed . . . , it also indirectly controls the last date on which a Rule 11 sanctions motion may be filed. At the very least, a party must serve its Rule 11 motion before the court has ruled on the pleading, and thus before the conclusion of the case. Otherwise, the purpose of the 'safe harbor' provision would be nullified. This has been interpreted to mean that Rule 11 motions must be served at least a full 21 days before the court concludes the case or resolves the offending contention . . . ."  *In re Pennie & Edmonds LLP*, 323 F.3d 86 at 89 (quoting 2 *Moore's Federal Practice* § 11.22[1](c) (3d ed.2001) (footnotes omitted)); see also *Morroni v. Gunderson*, 169 F.R.D. 168 (M.D. Fla. 1996) ("Defendants' filing of motion for Rule 11 sanctions based on allegations of complaint was improper where motion was filed following plaintiffs' voluntary dismissal of action; plaintiffs' dismissal constituted withdrawal of offending pleading, and plaintiffs were thus protected from sanctions under Rule's safe harbor provision.")

In *Unite Here v. Cintas Corp.*, 500 F. Supp. 2d 332, 338 (S.D.N.Y. 2007), sanctions were rejected when plaintiff voluntarily dismissed a case within the 21-day safe-harbor period.  The court stipulated that even if the defendant noticed the motion for Rule 11 sanctions before a voluntary dismissal, if that dismissal occurred within the 21 day safe-harbor window, sanctions are unavailable.  Similarly, in another case in this District the court rejected Rule 11 sanctions for an attorney who no longer represented any party in the case and therefore could not withdraw any challenged paper.  *Lan v. Time Warner, Inc.,* No. 11CIV2870ATJCF, 2016 WL 6778180, at *7 (S.D.N.Y. Oct. 18, 2016), *report and recommendation adopted,* No. 11CIV2870ATJCF, 2016 WL 6779526 (S.D.N.Y. Nov. 15, 2016).  That decision relied on well-established authority that "Rule 11 motion must be rejected where 'the party who allegedly violated the rule no longer is able to withdraw the improper papers or otherwise rectify the alleged offense and thus has not been given the full protection mandated by the rule's safe harbor provision.'" *Id.* (quoting 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1337.2, at 729 (3d ed. 2004)).

The facts in *Lan* are even less favorable to the plaintiff's position than the facts in this case.  In *Lan*, the plaintiff's motion for voluntary dismissal was still pending when Rule 11 sanctions motion was filed.  That court held that "any Rule 11 sanctions motion … would be too late because Sang Lan *already* seeks to withdraw the offending pleading." *Lan*, 2016 WL 6778180 at *7.  *See also Castro v. Mitchell*, 727 F. Supp. 2d 302, 308-09 (S.D.N.Y. 2010) (collecting cases supporting premise that Rule 11 motion is untimely if filed at point when party can no longer act to withdraw or correct offending submission).  In this District, Rule 11 sanctions would ring hollow if the plaintiff has already offered the remedy the rule encourages.

Here, not only did the Plaintiff elect to voluntarily dismiss the case but the Court granted the dismissal more than two months before Defendant even served Plaintiff with a motion for Rule 11. At the time Defendant noticed Plaintiff for sanctions, there was no meaningful way for Plaintiff or his counsel to withdraw, amend or correct any pleading, motion or submission. Without the benefit of the 21-day safe-harbor provision, Rule 11 sanctions motion is not only inappropriate, but is itself frivolous, motivated by an improper purpose to harass, unduly delay and needlessly increase the cost of litigation. The Court should therefore deny Defendant's motion for Rule 11 sanctions as procedurally improper.

**B.**     **DEFENDANT HAS FAILED TO DEMONSTRATE THAT PLAINTIFF'S PLEADING IS SUBSTANTIVELY BASELESS OR IMPROPERLY MOTIVATED**

"These designs were not well thought out and we deeply apologize to anyone that has been upset and/or offended, especially to the families of the artists. We are huge fans of their music and it was not our intention to disrespect these cultural icons in anyway. The tee shirts have been pulled from retail and all images have been removed. We will use this as an opportunity to learn from these mistakes and again, we are very sorry."

-   Defendant's public statement as reported in *Kendall Jenner Apologizes for Notorious B.I.G and Tupac T-Shirts: 'It Was Not Our Intent to Disrespect'*, US MAGAZINE, June 29, 2017 [*see* https://www.usmagazine.com/celebrity-news/news/kendall-jenner-apologizes-for-notorious-big-and-tupac-t-shirts-w490538/] (emphasis added)

Defendant's principal, Kendall Jenner, has already admitted to violating U.S. Copyright law by expropriating Plaintiff's photograph without authorization for use on her commercially exploited T-shirts. By her own admission, she was selling the infringing T-Shirts in retail stores and concedes that her unauthorized exploitation was a "mistake." Given this public admission of liability, Jenner cannot possibly claim that Plaintiff's claim is frivolous or improperly motivated as he is the true owner of the copyright to the photograph and Defendant used it without his permission or consent. Accordingly, Plaintiff's claim satisfies the two elements of a *prima facie* copyright infringement claim. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150

9

F.3d 132, 137 (2d Cir. 1998) (to establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work.).

Defendant principally argues, without any evidence, that because the actual damages that Plaintiff may recover are "low," the claim lacks merit.  However, a copyright holder is entitled to relief under the Copyright Act regardless of whether monetary relief is even available.  *Davis v. Gap, Inc.,* 246 F.3d 152, 158 (2d Cir. 2001).  This is because, pursuant to U.S. Supreme Court law, a copyright holder is <u>not</u> required to show any damages to sustain his claim.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); see also *In re Aimster Copyright Litig.,* 334 F.3d 643, 649 (7th Cir. 2003) ("[A] copyright owner who can prove infringement need not show that the infringement caused him a financial loss.").  As such, the amount of damages that Plaintiff may ultimately recover has no bearing on the merits of Plaintiff's infringement claim.

Moreover, a finding of liability under the Copyright Act serves to vindicate the public interest and deter future infringement regardless of the amount of monetary damages awarded. S*ee, e.g., Crown Awards, Inc. v. Disc. Trophy & Co*., 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), *aff'd*, 326 F. App'x 575 (2d Cir. 2009) ("The Copyright Act's principal purpose is to encourage the origination of creative works by attaching enforceable rights to them" and noting *that* meritorious claims "help demarcate the boundaries of copyright law . . . as clearly as possible in order to maximize the public exposure to valuable works.") (internal quotations and citations omitted); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) (public interest can only be served by upholding copyright protections, thus preventing misappropriation of skills, creative energies, and resources invested in protected

work). Furthermore, one of the primary purposes of the Copyright Act is to "deter future infringements" *Walt Disney Co. v. Best,* No. 88 Civ. 1595(SWK), 1990 WL 144209, at *4 (S.D.N.Y. Sept. 26, 1990).

Here, even if the damages suffered were only one dollar, Plaintiff is entitled to file suit against Defendant for no other reason than to enforce the Nation's copyright laws and vindicate the public interest. Plaintiff's counsel is well known for enforcing the rights of individual photographers in this District and he should not be punished for upholding the Nation's laws.

### POINT II:    SANCTIONS UNDER 28 U.S.C. §1927 SANCTIONS ARE NOT WARRANTED

Defendant also moves for sanctions under section 1927 which provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

18 U.S.C. § 1927.

### A.    DEFENDANT HAS FAILED TO DEMONSTRATE "BAD FAITH"

Defendant primarily relies upon *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986) and its progeny which emphasizes the high threshold of improper conduct that must be present in order to justify an award of attorneys' fees pursuant to § 1927. The Second Circuit notes that it has "declined to uphold awards under the bad-faith exception absent both 'clear evidence' that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes' " and "a high degree of specificity in the factual findings of [the] lower courts." *Id.* at 1272. *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114–15 (2d Cir. 2009) ("absent other specific evidence of Dorsey's bad faith, a sanction under the court's inherent power is unjustified"); *Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d

34, 38 (2d Cir.1995) ("[T]he court's factual findings of bad faith must be characterized by a high degree of specificity.") (internal quotation marks omitted).

No such high degree of specificity is possible in the present case.  Defendant has failed to show that Plaintiff's complaint is frivolous or motivated by an improper purpose, such as delay or harassment. In fact, there is ample evidence showing that Defendant committed copyright infringement.  Defendant's principal, Kendall Jenner, even issued a public statement to apologize for the infringement.  *See* Exhibit A.  The claim does not only have color but is completely valid.

Nor do the facts of this case satisfy the § 1927 standard set forth in *Revson v. Cinque & Cinque, P.C.,* 221 F.3d 71 (2d Cir.2000).  There, the district court identified eleven different instances of sanctionable behavior by the attorney, including: (1) threatening to "tarnish" the reputation of opposing counsel and subject him to the "legal equivalent of a proctology exam"; (2) publicly accusing the opposing attorney of fraud; (3) threatening to interfere with other clients of the opposing attorney; (4) threatening to sue opposing counsel individually and seek discovery of his personal finances; and (5) threatening to send the court a letter accusing opposing counsel of criminal conduct. *Id*. at 77–78.  The Second Circuit found that sanctions under § 1927 were still not warranted. *Id.* at 82.

It is clear that whatever the Defendant complains of here pales in comparison to the facts in *Revson*.  *See Torah Soft Ltd. v. Drosnin,* 224 F. Supp. 2d 704, 722 (S.D.N.Y. 2002) ("The conduct of attorneys here, even if it could be faulted in any respect, would still be far from the threshold that Revson establishes for imposing sanctions.").

## B.    DISMISSING A CASE PURSUANT TO RULE 41 IS <u>NOT</u> GROUNDS FOR SANCTIONS

Defendant primarily argues that Plaintiff and his counsel should be sanctioned for voluntarily dismissing the case under Rule 41.  However, the Second Circuit has explicitly held

that because a plaintiff has an unfettered right to dismiss a case for any reason (or no reason at

all) under Rule 41, the act of filing a notice of voluntary dismissal is not in and of itself

sanctionable. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114–15 (2d Cir.

2009) (holding that voluntary dismissal, without bad faith, is not sanctionable even if the plaintiff

dismissed the case "to flee the jurisdiction or the judge").  The Second Circuit ruled that:

> With regard to the Rule 41 dismissal, a plaintiff who has not been served with an answer
> or motion for summary judgment has an "unfettered right voluntarily and unilaterally to
> dismiss an action." *Thorp v. Scarne,* 599 F.2d 1169, 1175 (2d Cir.1979). Dismissal of a
> suit may be disruptive and annoying, but it is permitted by the rules: [P]laintiffs tend to
> dismiss actions that do not look promising while defendants generally want to obtain an
> adjudication on the merits in precisely the same cases. [But as] long as the plaintiff has
> brought himself within the requirements of Rule 41, his reasons for wanting to do so are
> not for us to judge. *Id.* at 1177 n. 10.

> It follows that Dorsey was entitled to file a valid Rule 41 notice of voluntary dismissal for
> any reason, and the fact that it did so to flee the jurisdiction or the judge does not make
> the filing sanctionable. Accordingly, because the district court made no finding that Dorsey
> acted in bad faith in voluntarily dismissing the case under Rule 41, and because
> Dorsey was entitled by law to dismiss the case, the district court's sanction against
> Dorsey for filing the voluntary dismissal must be reversed.

> *Wolters Kluwer Fin. Servs., Inc*, 564 F.3d at 114–15.

### C.    PLAINTIFF'S OMISSION IN SERVING THE NOTICE OF PRETRIAL CONFERENCE DID NOT PREJUDICE DEFENDANT AND IS NOT GROUNDS FOR FEES

Plaintiff admits that he did not timely serve the Notice of Initial Pretrial Conference on

defendant and respectfully avers that such omission constituted an inadvertent administrative

failure. Plaintiff's counsel has already been sanctioned $2,000 by Judge Cote in an unrelated case

for making a similar omission and has since taken diligent steps to ensure that such errors do not

repeat in the future.  The omission in this case took place <u>before</u> Judge Cote issued her sanctions.

Notably, Plaintiff's counsel was ordered to pay the sanction to the Clerk of Court, not to his

client's opponent.

Here, Defendant was <u>not</u> prejudiced by the omission of service and thus an award of fees in connection with such omission is not warranted. Defendant complains of not learning of the Order for Pretrial Conference until "on its own" its counsel checked the Court's docket on November 13, 2017.   While the Plaintiff acknowledges the delay in serving the order for a conference scheduled for December 1, 2017, the Defendant omits that it executed a waiver of service document on October 12, 2017.  [Dkt. # 9].  Defendant's counsel, however, never made an appearance on the record.  In fact, on November 27, 2017, the Defendant's counsel posted a letter on ECF, without making a notice of appearance in the case.  Though Defendant's failure to appear on the record does not vitiate Plaintiff's responsibility for timely service of the order, Defendant's complaint that it only found out about the upcoming conference is disingenuous and a direct result of failing to make an appearance on the record.

**D.    DEFENDANT'S REFERENCES TO CONFIDENTIAL SETTLEMENT NEGOTIATIONS VIOLATES FED.R.EVID. 408 AND, IN ANY EVENT, ARE NOT GROUNDS FOR SANCTIONS**

Defendant's motion is particularly egregious in light of its submissions of an affidavit and confidential email communications that are clearly protected by Fed. R. Evid. 408. Defendant's submission reveals extensive details of settlement negotiations in an attempt to paint the Plaintiff as an extortionist.  These revelations are highly improper, contrary to public policy, and should warrant sanctions by the Court in the form of attorneys' fees for opposing this motion.

 While revealing Plaintiff's settlement positions, Defendant omits its own settlement demands regarding this Rule 11 motion.  Before filing the instant motion, Defendant demanded a substantial sum of money in order to withhold the filing of Rule 11 sanctions.  In doing so, Defendant improperly converted the Safe Harbor provision of Rule 11 into a monetary shakedown.  Given that the corrective action sought by the pending Rule 11 motion was payment

of money, rather than a withdrawal of a pleading, Defendant has abused judicial process thereby

warranting an award of attorneys' fees for having to oppose this motion.

In sum, Defendant has abjectly failed to make a clear and convincing showing of bad

faith that would warrant imposition of sanctions under section 1927.

### POINT III:    DEFENDANT IS NOT ENTITLED TO RECOVER ATTORNEYS' FEES AND COSTS UNDER SECTION 505 OF THE COPYRIGHT ACT

Finally, Defendant seeks its attorneys' fees and costs under section 505 of the Copyright

Act which provides:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.  Defendant's motion should be denied because: (a) it hasn't prevailed

with respect to Plaintiff's infringement claim; and because (b) the claim is objectively

reasonable.

### A.    DEFENDANT IS NOT A "PREVAILING PARTY" UNDER SECTION 505

Defendant avers that because Plaintiff dismissed the case without prejudice, Defendant is

the "prevailing party" for purposes of the Copyright Act. Defendant's position is patently

contrary to existing Supreme Court and Second Circuit law.

It is well-established that a copyright defendant does not become a "prevailing party"

pursuant to section 505 where the plaintiff has filed a voluntary dismissal *without* prejudice

under Rule 41(a)(1).  *See, e.g., TRF Music Inc. v. Alan Ett Music Grp., LLC*, No. 06 CIV. 0349

(PKC), 2006 WL 1376931, at *1 (S.D.N.Y. May 18, 2006) (rejecting defendants' argument they

were "prevailing parties" under 17 U.S.C. § 505 by nature of plaintiff having voluntarily

dismissed the action without prejudice prior to defendants filing an answer or moving against the

complaint); *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 600 (2001) (holding that in order to be considered a prevailing party for purposes of federal fee shifting statutes, a party must "secure a judgment on the merits or a court-ordered consent decree"); *Chambers v. Time Warner, Inc.,* 279 F.Supp.2d 362, 365 n. 4 (S.D.N.Y.2003) ("Although *Buckhannon* concerned the fee-shifting provisions of the Fair Housing Amendments Act of 1988 and the Americans with Disability [sic] Act of 1990, it is clear that *Buckhannon* applies with equal force to the fee-shifting provision of the Copyright Act.").  Defendant has failed to cite any authority to the contrary.

Prior to Defendant answering or moving against the complaint, Plaintiff voluntarily dismissed his claims without prejudice. Since Defendant had not yet answered, Plaintiff was entitled to do so as of right under Rule 41(a)(1), without seeking leave of Court.  *TRF Music Inc.,* 2006 WL 1376931, at *2.  "The voluntary dismissal 'lacks the judicial *imprimatur'* to render defendants prevailing parties [under the Copyright Act]. *Id.* (citing *Buckhannon,* 532 U.S. at 605)

Defendant's argument that it qualifies as a "prevailing party" for the purposes of § 505 hinges on a single case that "do[es] not mention, let alone distinguish (let alone persuasively distinguish)," the seminal Supreme Court case *Buckhannon* or its progeny. *Scrilla Hill Entm't Inc. v. Dupree*, No. 16-CV-490 (JMF), 2016 WL 5817064, at *3 (S.D.N.Y. Oct. 5, 2016) (referring to *Buckhannon.,* 532 U.S. at 600. Critically, "a party who secure[s] a judgment on the merits or a court-ordered consent decree" is a "prevailing party"; but a "voluntary change in the [other party's] conduct" is not enough. *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (quoting *Buckhannon,* 532 U.S. at 600 (omitted internal quotation marks). A voluntary dismissal by the Plaintiff is exactly the kind of act that the Second Circuit in *Carter* and the Supreme Court in *Buckhannon* view as insufficiently prevailing.

In light of the Supreme Court's decision in *Buckhannon*, to qualify as a prevailing party, "a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003); *accord Ninox Television Ltd. v. Fox Entm't Grp., Inc.*, No. 04-CV-7891 (DLC), 2006 WL 1643300, at *2 (S.D.N.Y. June 13, 2006). Those requirements are not met where, as here, a plaintiff voluntarily dismissed a complaint without prejudice. *See, e.g.*, *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, No. 13-CV-7574 (KPF), 2015 WL 321877, at *4 (S.D.N.Y. Jan. 26, 2015) ("[S]uch an act is not 'judicially sanctioned' since no court action is required."); see also *Magder v. Lee*, No. 14-CV-8461 (JFK), 2015 WL 4887551, at *2 (S.D.N.Y. Aug. 17, 2015). In addition, "a dismissal without prejudice is not a change in the legal relationship between the parties because plaintiff can still bring the claim again." *Id.*[1]

Here, Defendant cannot offer any reason to treat it as the prevailing party in light of Plaintiff's voluntary dismissal without prejudice. Moreover, Defendant still must face a judgment of liability for the identical claim in California. The Court should therefore deny sanctions pursuant to 17 U.S.C. § 505.

**B.    PLAINTIFF'S CLAIM IS OBJECTIVELY REASONABLE AND THEREFORE DOES NOT WARRANT A FEE AWARD PURSUANT TO THE COPYRIGHT ACT**

Even if the Court viewed the Defendant as a prevailing party, the Plaintiff's claim was neither unreasonable nor frivolous, his motivations were proper and a fee award would not advance the goals of compensation or deterrence.

---

[1] Even in cases where the dismissal is with prejudice, courts have consistently found that only decisions on merits will result in a prevailing party. "Given our earlier statement that generally the defendant is not considered the prevailing party when . . . there is a voluntary dismissal of the action by the plaintiff with prejudice." *Colombrito v. Kelly*, 764 F.2d 122, 129–30 (2d Cir. 1985) (quoting *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2d Cir.1980) (per curiam) (overruled in part on other grounds)

The Copyright Act allows the Court, at its discretion, to award attorneys' fees as part of costs to the prevailing party in a dispute. 17 U.S.C. § 505. In interpreting this statute in *Fogerty v. Fantasy*, the Supreme Court held that the Court "may" award attorneys' fees through an exercise of equitable discretion. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 518, 114 S. Ct. 1023, 1025, 127 L. Ed. 2d 455 (1994). In light of the presumption that parties bear their own costs, the Supreme Court identified several considerations that should guide the Court's determination of whether attorneys' fees are appropriate. "[A] district court determining whether to exercise its discretion to award fees under the Copyright Act may consider such factors as (1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264 (2d Cir. 2015) (citation omitted). These factors may be used only "so long as [they] are faithful to the purposes of the Copyright Act." *Fogerty,* 510 U.S. 534 n. 19.

1.      **Plaintiff's Infringement Claim is Objectively Reasonable**

In the wake of *Fogerty* several circuits, including this Circuit, have accorded the objective reasonableness factor substantial weight in determinations whether to award attorneys' fees. *Matthew Bender & Co. v. W. Pub. Co.*, 240 F.3d 116, 121 (2d Cir. 2001). In fact, District Courts in the Second Circuit had relied upon objective reasonableness as a litmus test for whether fee-shifting is appropriate. In *Kirtsaeng v. John Wiley & Sons, Inc.*, the Supreme Court clarified the guidance it had issued in *Fogerty.* "Without governing standards or principles, such provisions threaten to condone judicial "whim" or predilection. "A motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound

legal principles." *Kirtsaeng v. John Wiley & Sons, Inc.,* 136 S. Ct. 1979, 1986, 195 L. Ed. 2d 368 (2016) (internal quotation marks and citations omitted).

Here, it is undisputed that Plaintiff owns a valid copyright registration for the photograph in question and that Defendant expropriated Plaintiff's photograph without obtaining a license. Thus, Plaintiff's claim satisfies the two elements of a *prima facie* copyright infringement claim. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998) (to establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work.).

Without any evidence, Defendant claims that the actual damages are minimal. But Defendant's biased underestimate of the value of the case cannot be grounds for attorneys' fees. Even if the Court were to find that damages are minimal, such finding does not vitiate Defendant's liability, much less make Plaintiff's claim objectively unreasonable. Indeed, the Second Circuit has previously determined that a copyright holder is entitled to relief under the Copyright Act regardless of whether monetary relief is even available. *Davis v. Gap, Inc.,* 246 F.3d 152, 158 (2d Cir. 2001). This is because, pursuant to U.S. Supreme Court law, a copyright holder is <u>not</u> required to show any damages to sustain his claim:

> The existence of damages suffered is not an essential element of a claim for copyright infringement. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) (to establish a prima facie case of copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original"); 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 13.01, at 13–6 *159 (1999) ("Notably absent from this formulation of the prima facie case is damage or any harm to [the] plaintiff resulting from the infringement."). **The owner of a copyright is thus entitled to prevail in a claim for declaratory judgment of infringement without showing entitlement to monetary relief.**
>
> *Davis,* 246 F.3d at 158 (boldface added).

Since the Second Circuit's ruling in *Davis*, federal courts have consistently held that pecuniary harm is not a prerequisite to sustaining a copyright infringement claim. *See, e.g.*, *Cardiff Chamber of Commerce, Inc. v. Lebherz*, 2016 WL 9525236, at *2 (S.D. Cal. July 15, 2016) ("[t]he harm is the invasion of the copyright; no financial loss is required."); *In re Aimster Copyright Litig.*, 334 F.3d 643, 649 (7th Cir. 2003) ("[A] copyright owner who can prove infringement need not show that the infringement caused him a financial loss."); *eSilicon Corp v. Silicon Space Tech*, No. C-11-06184 EDL, 2013 WL 12174295, at *10 (N.D. Cal. Feb. 22, 2013) ("Damages . . . are not a required element of a prima facie case of copyright infringement claim"); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-CV-00970-PAB-KMT, 2013 WL 1129404, at *6 (D. Colo. Mar. 18, 2013) ("Entitlement to monetary damages damages is not an element of a copyright claim seeking either declaratory or injunctive relief"); *Marobie-FL, Inc. v. Nat'l Ass'n of Fire Equip. Distributors*, No. 96 C 2966, 2002 WL 226864, at *2 (N.D. Ill. Feb. 13, 2002) ("The existence of damages suffered is not an essential element of a claim for copyright infringement"). Thus, even if the Court were to credit Defendant's argument that Plaintiff has suffered minimal pecuniary harm, that does not render his claim objectively unreasonable as damages are not even an element of Plaintiff's claim.

## 2.    Plaintiff's Motivations Were and Are Proper

A finding of infringement liability serves to vindicate the public interest regardless of the amount of monetary damages awarded. S*ee, e.g., Crown Awards, Inc. v. Disc. Trophy & Co*., 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008), *aff'd*, 326 F. App'x 575 (2d Cir. 2009); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983); *Walt Disney Co. v. Best,* No. 88 Civ. 1595(SWK), 1990 WL 144209, at *4 (S.D.N.Y. Sept. 26, 1990). It was

therefore objectively reasonable and proper for Plaintiff and his counsel to file the claim, if for

no other reason than to vindicate the public interest and deter future infringements.[2]

      While the Defendant wildly speculates as to the improper motivation at play in cases not

before this Court, it does not directly address improper motivations of this Plaintiff. Defendant

even admits that Plaintiff's settlement demand was substantially reduced over the course of

litigation, a fact that mitigates against bad faith or vexatious behavior intended to delay, protract

or otherwise escalate litigation costs. Having no desire to prolong the litigation beyond what is

necessary, Plaintiff would have accepted a reasonable offer. Instead, Defendant threatened the

Plaintiff with a Rule 11 sanction motion unless the Plaintiff paid a substantial sum of money. In

delaying making an appearance on the record and then demanding a payment in order to avoid

Rule 11 sanctions, Defendant's own motivations could be construed as improper.

**3.      A Fee Award Will <u>Not</u> Advance the Goals of Compensation and Deterrence**

      The need to deter objectively unreasonable, frivolous, improperly motivated suits must

always be balanced by the need to encourage litigants who have colorable claims or claims

regarding a murky area of the law to come forward. *Dow Chem. Pac. Ltd. v. Rascator Mar.

S.A.,* 782 F.2d 329, 344 (2d Cir. 1986) ("To ensure, however, that fear of an award of attorneys'

fees against them will not deter persons with colorable claims from pursuing those claims, we

have declined to uphold awards under the bad-faith exception absent both "'clear evidence' that

the challenged actions 'are entirely without color and [are taken] for reasons of harassment or

delay or for other improper purposes."). The present case not only has color but is legitimate,

---

[2] Conversely, leveling attorneys' fees against Plaintiff would both discourage creation of works by authors fearful of widespread infringement, and impede those who build upon that work by creating confusion about the applicable standard of the first-sale doctrine. Moreover, discouraging litigators eager to incentivize existing licensing regimes does not serve the objectives of the Copyright Act.

nor could the Defendant show clear evidence that the claim came about for the improper purposes, including harassment and delay.  To repeat, Plaintiff had a valid copyright and the Defendant displayed his work without permission.  That suffices as a colorable claim, even barring the Defendant's failure to show improper motivation.    In fact, Defendant does not even directly argue for the need to compensate and deter in its opening brief.

"[F]ee awards are at bottom an equitable matter, the Second Circuit has stated that courts should not hesitate to take the relative wealth of the parties into account." *Canal,* 792 F.Supp.2d 680.  Needless to say, the parties in the present litigation could not be more unmatched.  The Plaintiff is a private individual while the Defendant is a company run by multi-millionaire celebrities.  To suggest that this Defendant needs an award of attorneys' fees to incentivize defending its rights, real or imagined, is absurd.   This Defendant, run by prominent social media figures, super-models and entrepreneurs are familiar with copyright violations.  This Defendant, and those similarly situated do not require incentivizing to defend themselves.

Conversely, an exorbitant award of attorneys' fees would excessively chill any creator of content who wants to enforce his or her copyright.   Any private individual would who has a colorable claim, even it turns out to be a losing claim, would be discouraged to enforce his or her rights.   That is not a desirable result according to the objectives of the Copyright Act.   *Great Importations, Inc. v. Caffco Int'l, Inc.,* No. 95CIV.0514(MBM)(SEG), 1997 WL 603410, at *1 (S.D.N.Y. Sept. 30, 1997) ("[A]n award here could have a chilling effect on future plaintiffs seeking to protect their copyrights. They would have to choose between losing their rights or risking that a court might disagree with them as to infringement and award substantial fees."). Likewise, neither the factual circumstances of the Plaintiff's claims as discussed above nor his manner of prosecuting them warrants a departure from the "American rule" of each party's

bearing its own expenses, and an a*ward would not be in the interests of the purposes of the Copyright Act.   See Hallford v. Fox Entm't Grp., Inc., No. 12 CIV. 1806 WHP, 2013 WL 2124524, at \*2 (S.D.N.Y. Apr. 18, 2013) (emphasizing that knee-jerk awards would chill excessively).   Worse still, awarding attorney* fees may chill litigation of close cases, and prevent "the clear demarcation of the boundaries of copyright law." *Chivalry Film Prods.,* 2007 WL 4190793, at \*2.   Consequently, it difficult to conceive of a Copyright Act goal that an award in this case would serve.


## CONCLUSION

For the foregoing reasons, Defendant's motion for attorneys' fees and sanctions should be DENIED and Plaintiff should be awarded his attorneys' fees for being forced to oppose Defendant's frivolous and procedurally improper sanctions motion.


Respectfully Submitted,

**/s/richardliebowitz/**

Richard Liebowitz

*Counsel for Plaintiff Al Pereira*